The **MISSISSIPPI FREEDOM DEMOCRATIC PARTY** et al., Appellants,

v.

The **DEMOCRATIC PARTY OF** the **STATE OF MISSISSIPPI** et al., Appellees.

No. 23705.

United States Court of Appeals
Fifth Circuit.

June 6, 1966.

Alvin J. Bronstein, Jackson, Miss., Arthur Kinoy, New York City, Benjamin E. Smith, New Orleans, La., William Kunstler, New York City, Morton Stavis, Newark, N. J., for appellants.

Will S. Wells, Asst. Atty. Gen., Jackson, Miss., Will A. Hickman, Oxford, Miss., for appellees.

Before WISDOM and THORNBERRY, Circuit Judges, and COX, District Judge.

WISDOM, Circuit Judge:

May 2, 1966, the Mississippi Freedom Democratic Party and five Negro citizens and residents of Mississippi filed a complaint to enjoin the Democratic Party of Mississippi from holding primary elections scheduled for June 7, 1966. They seek a judgment setting a new date for the primary sometime before the general elections to be held November 2, 1966, preferably in September. The individual plaintiffs allege that they were unconstitutionally denied the right to register and to vote in elections in the state. They sue on behalf of themselves and others similarly situated. The plaintiffs allege that the equities in their favor that flow from a hundred years of racial discrimination point to the court's allowing additional time in which Negroes may register so that more Negroes may be able to participate in the Democratic primary. They rely heavily on Hamer v. Campbell, 5 Cir. 1966, 358 F.2d 215.

After a full hearing, May 16–17, the district court denied the plaintiffs' motion for a preliminary injunction. May 20 the plaintiffs-appellants filed a notice of appeal from that order.

May 24 the appellants applied to this Court for emergency relief. They moved for a temporary restraining order enjoining the holding of the primary elections until this Court should be able to hear and decide the appeal from the district court's order. Friday, May 27, this Court held a special hearing on the application for emergency relief. At the conclusion of the oral argument, the Court, considering the advantages to the parties and to the public of deciding the appeal before the date of the scheduled election, directed that the cause be treated as an expedited appeal on the merits from the denial of the preliminary injunction. The Court directed the parties to file briefs by Wednesday, June 1, 1966.

The Court has now had an opportunity to read the full record and to consider the briefs. We affirm the judgment of the district court.

\* \* \* \* \*

The exceptional factual situation that justified the relief this Court granted in *Hamer* is not present in the case now before this Court. Here the record shows that for a year there has been no serious

impediment to Negroes registering in Mississippi. (1) In June 1965 the State abolished all of its registration requirements other than that the applicant be of the age of majority, have two years' residence in the state, and be able to read and write.[1] The Attorney General of Mississippi instructed county registrars to use a simple, short registration form. (2) Shortly after the Voting Rights Act of 1965, 79 Stat. 437, 42 U.S.C. § 1973 et seq., became effective August 6, 1965, the Attorney General of the United States assigned federal voting examiners to 23 counties in Mississippi; however, examiners were assigned to five counties only very recently. (3) The record shows that in many of the other 59 counties in the state local registrars freely registered Negroes. (4) The record fails to show any substantial evidence of acts of intimidation or coercion designed to inhibit Negroes from registering.

The appellants say that all of this misses the point of the case. They argue that their right to equitable relief does not depend on any acts of intimidation, terror, or economic reprisal taking place now or that took place in the immediate past or that may take place in the immediate future. It depends on a century of racial discrimination during which the State of Mississippi and its officials engaged in "a long-standing, carefully prepared, and faithfully observed plan to bar Negroes from voting in the State of Mississippi". United States v. Mississippi, 1965, 380 U.S. 128, 85 S.Ct. 808, 13 L.Ed.2d 717.

Acceptance of this predicate would narrow the problem before the Court to devising relief that would "eradicate for the future the consequences of past discriminations". Hamer v. Campbell, 358 F.2d at 219. This Court has not been backward in exercising its equity power to fashion remedies appropriate in analogous situations; for example, the "freezing principle". United States v. Dogan, 5 Cir. 1963, 314 F.2d 767; United States v. State of Louisiana, E.D. La. 1964, 225 F.Supp. 353, aff'd. 1965, 380 U.S. 145, 85 S.Ct. 817, 13 L.Ed.2d 709. The proper relief here, so appellants argue, would be postponement of the primary to enable additional Negroes to register during the summer. It is undisputed that Negro registration accelerates during the summer, because of activities by civil rights organizations. A massive registration drive is planned for Mississippi for the summer months of 1966.

This argument would be more effective were the election not just around the corner. It is no small disruption to the state or to a political party or to the public when an election is postponed at the last moment. All of the ballots have been printed and must be paid for. Ballot boxes in 1800 voting precincts in Mississippi have been prepared. Poll books for each precinct have also been prepared. Election managers (commission-

---

1. The legislature, in extraordinary session, repealed statutory provisions and initiated the repeal of constitutional provisions requiring, among other things, a constitutional interpretation test, a complex application form (which some Registrars insisted be executed perfectly), the good moral character test, and the publication of the names of applicants in the newspaper. See 1965 Amendments to Mississippi Constitution. § 244, § 241A and revisions of Mississippi Code §§ 3209.6 et seq. The legislature substituted therefor the requirement that applicants for registration be able to read and write, § 3209.7, and that they complete a six-question application and take a pre-scribed statutory oath. The legislature further required that all voters be able to read and write, (§ 3235) and repealed a statute providing for assistance at the polls to illiterate voters, § 3212.7. The voters of Mississippi ratified the necessary constitutional changes on August 17, 1965. As a matter of fact even prior to this ratification by the voters, the Attorney General of Mississippi, on July 7, 1965, advised the registrars of the respective Mississippi counties that in his opinion the new form prescribed by the legislature was in effect and could be used immediately. By August 1, 1965, the majority of registrars had begun to do so.

ers, watchers) for the 1800 precincts have been appointed.

Everyone knows that as a political campaign draws to an end, the tempo increases. The candidates' expenses increase. Political intrusions on the public, by television, radio, and sound-truck, increase. At this late date, to postpone the election until September is to subject the candidates and the public to an unbargained for, expensive, and exacerbating extension of the current campaign.

Not to be ignored is the fact that if the primary is held in September, there will be an interval of less than a month before the general election. In a state such as Mississippi, which has run-off primaries, this interval is so brief that it would severely burden election officials conducting second primaries.

The tight grip of a long dead hand is hard to break. More than one summer may pass before that grip is broken and the effect of its clasp on the present completely undone. Weighing competing values and balancing the inconveniences, we feel compelled to affirm the district court's denial of a preliminary injunction.