The **RIPON SOCIETY, INC.**, et al.,
Plaintiffs,

v.

**NATIONAL REPUBLICAN PARTY** and
**Republican National Committee,**
Defendants.

Civ. A. No. 2238-71.

United States District Court,
District of Columbia.

May 4, 1972.

Robert Amory, Jr., Washington, D. C., and Robert M. Pennoyer, Patterson, Belknap & Webb, New York City, for plaintiffs.

Fred C. Scribner, Jr., Washington, D. C., for defendant Republican National Committee.

Davis R. Robinson, Washington, D. C., and E. N. Carpenter, II, Wilmington, Del., and David B. Kennedy, Burgess, Kennedy & Davis, Sheridan, Wyo., for Republican State Committee of Del. and Republican State Central Committee of Wyo., amici curiae.

OPINION

WILLIAM B. JONES, District Judge.

Plaintiffs in this action challenge the formula for apportionment of delegates to the Republican National Convention as unconstitutional and in violation of Article II, Section 1; the Fifth Amendment; and the Fourteenth Amendment, Sections 1 and 2, of the Constitution. The jurisdiction of this court is invoked under 28 U.S.C. § 1343(3) and (4); 28 U.S.C. § 2201; 42 U.S.C. §§ 1983, 1985

(2) and (3) and 1988; and under the constitutional provisions mentioned above.

Plaintiffs filed their complaint for declaratory and injunctive relief on November 8, 1971. At that time, they sought a declaratory judgment that the apportionment of delegates to the 1972 Republican National Convention in accordance with the 1972 formula adopted at the 1968 national convention would result in invidious discrimination, without rational basis, in violation of the Fifth and Fourteenth Amendments to the Constitution. Plaintiffs further requested the Court to enjoin the defendants from apportioning delegates to the 1972 convention on the basis of the 1972 formula adopted in 1968.

On December 3, 1971, the parties entered into a stipulation in which it was agreed that, since the call for delegates to the 1972 convention would issue in December 1971 or early January 1972 and since a final adjudication of the constitutional standards applicable to the apportionment formula could not be expected before that time, plaintiffs would amend their complaint to focus on the formula likely to be adopted at the 1972 Republican National Convention for the apportionment of delegates to the 1976 convention. Without intimating how it would rule on the question of ripeness for declaratory and injunctive relief, the Court approved the stipulation.

Plaintiffs thereafter amended their complaint and motion for preliminary injunction and filed a motion for summary judgment. Defendants filed an answer to the complaint, an opposition to the motion for preliminary injunction, and moved to dismiss the Ripon Society, Inc., as a plaintiff in this action, and to dismiss the action against the defendant National Republican Party, to quash service and to strike from the pleadings all references to said defendant. At the same time, the Republican State Committee of Delaware and the Republican State Central Committee of Wyoming petitioned for leave to intervene as defendants in this action or, in the alternative, to participate as *amicus curiae*.

The Court heard extensive oral argument of counsel on all of the foregoing motions on March 9, 1972. At that time, the Court denied defendants' motion to dismiss the Ripon Society, Inc., as a party plaintiff in this action and further denied defendants' motion to dismiss the defendant National Republican Party, to quash service and to strike from the pleadings all references to said defendant.[1] The Petitions of the Republican State Committee of Delaware and the Republican State Central Committee of Wyoming to intervene were denied, but leave was granted to each to appear as *amicus curiae* in connection with any motions pending in this action. The Court took under advisement plaintiffs' motion for summary judgment, allowing two weeks for the filing of any additional affidavits and *amicus* briefs.

Upon consideration of the pleadings, memoranda and affidavits submitted in this case, and having heard argument of counsel on the motions, the Court finds that there are no issues of material fact genuinely in dispute and that summary judgment is appropriate at this juncture in light of the following findings of fact and conclusions of law.

I.

Plaintiffs in this action are the Ripon Society, Inc., a Republican research and policy organization whose members are young business, professional and academic men and women; plaintiffs Howard Gillette, Jr. and Robert D. Behn are respectively, President and National Executive Director of the Ripon Society, Inc. In addition to the above, there are other named individual plaintiffs, citizens of the United States, Republicans and registered and qualified voters of the District of Columbia, California, Illinois, Indiana, Massachusetts, Minne-

1. See State of Georgia et al. v. National Democratic Party et al., 145 U.S.App. D.C. 102, 447 F.2d 1271, 1273 n. 2 (1971).

sota, New Jersey, New York and Pennsylvania.

Defendant National Republican Party is an unincorporated association [2] which acts by and through the Republican National Convention and the defendant Republican National Committee. The latter, also an unincorporated association, has general management of the National Republican Party, as provided in Rule 19 adopted by the 1968 Republican National Convention.[3] Both the National Republican Party and the Republican National Committee have headquarters in the District of Columbia.

The formula for the apportionment of delegates to the Republican National Convention in a presidential election year is adopted by the delegates to the preceding national convention. Thus, the formula for the 1972 convention was adopted by the delegates at the 1968 convention. Although the formulas adopted by successive Republican National Conventions since 1900 have varied substantially in certain convention years, the formula adopted by the 1968 convention is substantially the same as the formula adopted by every Republican National Convention since 1948.[4]

Rule 30 of the Rules adopted by the Republican National Convention of 1968 provides the formula for apportionment of delegates to the 1972 convention.[5] Under that Formula:

1. The 1972 Convention will comprise a total of 1,346 delegates from the

**2.** Although defendants contend to the contrary, the same contention was made by defendants and rejected by the Court of Appeals in *Georgia, supra* note 1, *Id.*

**3.** Rule 19 of the Rules Adopted by the Republican National Convention, August 5, 1968, provides in part:

(a) A National Committee shall be elected by each National Convention, called to nominate candidates for President and Vice President, and shall consist of two (2) members from each State, and an additional member as hereinafter provided, and shall have the general management of the affairs of the Republican Party in the United States and its territories subject to direction from time to time of the National Convention.

**4.** See affidavits submitted by Josephine Good, Convention Director, Republican National Committee, and Fred Scribner, General Counsel, Republican National Committee.

**5.** Rule No. 30

The membership of the next National Convention shall consist of:

A. Delegates at Large

1. Four (4) Delegates at Large from each of the fifty (50) States.

2. Two (2) additional Delegates at Large for each Representative at Large in Congress from each State.

3. Nine (9) Delegates at Large for the District of Columbia and three (3) additional Delegates at Large for the District of Columbia if it cast its electoral vote, or a majority thereof, for the Republican Nominee for President in the last preceding Presidential election.

4. Six (6) additional Delegates at Large from each State casting its electoral vote, or a majority thereof, for the Republican Nominee for President in the last preceding Presidential election. If any State does not cast its electoral vote or a majority thereof for the Republican nominee in the last preceding Presidential election, but at that election or at a subsequent election held prior to the next Republican National Convention elects a Republican United States Senator or a Republican Governor or a Republican majority of the State's membership in the United States House of Representatives then in such event such State shall be entitled to such additional Delegates at Large.

5. Five (5) Delegates at Large for Puerto Rico, and three (3) Delegates at Large for the Virgin Islands, and three (3) Delegates at Large for Guam.

B. District Delegates

1. One (1) District Delegate from each Congressional District casting four thousand (4,000) votes or more for the Republican nominee for President or for any elector pledged to vote for the Republican nominee for President in the last preceding Presidential election, or for the Republican nominee for Congress in the last preceding Congressional election.

2. One (1) additional District Delegate for each Congressional District casting twelve thousand five hundred (12,500) votes or more for the Republican nominee for President or for any elector pledged to vote for the Republican nominee for Pres-

States, the District of Columbia, Puerto Rico, the Virgin Islands and Guam.

2. 200 delegates, or 16.3% of the total delegation, will be apportioned, four delegates each, to the fifty states; nine to the District of Columbia; five to Puerto Rico; three each to the Virgin Islands and Guam. None of these delegates are apportioned on the basis of population.[6]

3. 856 delegates, or 64.5% of the total delegation, will be apportioned to Congressional Districts, one for each District casting 4,000 votes and one additional delegate for each Congressional district casting 12,500 votes for (a) the Republican Presidential nominee in 1968, or (b) the Republican nominee for Congress in 1970; twelve delegates will be apportioned, two each, to the six states which have a Representative at Large in Congress.[7]

Although the language of Rule 30 apportions the 856 District delegates on the basis of a minimum Republican voter turnout, they clearly represent the total population within the districts as well. Congressional districts are apportioned on a population basis, adjusted per each decennial census, and each district encompasses a population far in excess of 4,000 or even 12,500.[8] Thus, each segment of population represented by a Congressional district would be entitled to one or possibly two delegates to the national convention as a result of a minimum turnout of Republican votes in that district. Heavily populated states with more Congressional districts would, of course, be more heavily represented at the national convention.

4. Thus a total of 1,068 delegates, or approximately 80% of the delegates under the 1972 formula, would be apportioned on the basis of electoral college votes, two hundred of the delegates representing twice the membership of the United States Senate, and 868 delegates (856 District delegates and 12 delegates from states which have a Representative at Large in Congress) representing approximately twice the membership of the House of Representatives.

5. The remaining 258 delegates, or 19.1% of the total delegation, will be apportioned among the states on the basis of a bonus of six delegates to each of forty-three states which cast its electoral college vote for the Republican nominee for President in 1968 or, in that or a subsequent election, elected a Republican Senator or Governor or Republican majority to the House of Representatives.[9] The bonus delegates are not apportioned on a basis of population or of minimum Republican voter turnout. Bonus delegates are awarded solely on

---

ident in the last preceding Presidential election, or for the Republican nominee for Congress in the last preceding Congressional election.

C. Alternate Delegates

One (1) Alternate Delegate to each Delegate to the National Convention.

6. The allocation of a minimum of four delegates is analogous to the constitutional allotment of two United States Senators to each State in Congress and two electors in the Electoral College, equal to the two Senators. The total of two hundred delegates in this part of the 1972 Formula is, of course, exactly twice the number of Senators from the fifty states.

7. The six states are Alaska, Delaware, Nevada, North Dakota, Vermont and Wyoming.

8. The average population per Congressional District ranges from 100,000 in the small-

est states to over 400,000 in the largest states. Only districts with no Republican candidate for Congress in 1970 or which did not in 1968 cast 4,000 votes for the Republican nominee for President failed to qualify for the minimum award of one district delegate; only a very few districts with a Republican candidate for Congress in 1970 failed to qualify for two district delegates under the 1972 formula. See 1972 Congressional Directory 92d Cong., ¶d Sess., at 398–406.

9. Although a state could qualify for six bonus delegates under the 1972 formula in several different ways, as provided in Rule 30 A. 4., *supra* note 6, no more than six bonus delegates are allotted to any one state, regardless how many ways it qualifies. Only Alabama, Georgia, Louisiana, Maine, Mississippi, Rhode Island and Texas failed to qualify in some way for bonus delegates under the 1972 formula.

the basis of Republican victories in certain specified election contests.

Plaintiffs attack primarily the allocation of 258 delegates under the bonus system described above. They contend that the apportionment of six bonus delegates to each of the states qualifying for them under the 1972 formula discriminates against the more populous states. They have submitted in affidavits several tables by which they attempt to demonstrate the extent to which the more populous states are underrepresented by the 1972 formula.[10]

An examination of those tables reveals that an application of the 1972 formula will have the following results:

1. Apportionment of six bonus delegates to the forty-three states qualifying for them under the 1972 formula will provide a one hundred percent increase in the delegations of Alaska, Delaware, Nevada, North Dakota, Vermont and Wyoming, but only a 6.7% increase in the California delegation, a 7.3% increase in the New York delegation, and an 11.5% increase in the Illinois delegation.

2. The same bonus system would allot 37% of the 1972 delegates to the eight most populous states,[11] which have 48.7% of the total national population under the 1970 census, 51.8% of the total vote cast for the Republican Presiden-

tial nominee in 1968, and 42.7% of the electoral college votes; whereas 63% of the 1972 delegates would be apportioned to the remaining forty-two states, the District of Columbia and the Territories, which have 51.3% of the total national population under the 1970 census, 47.9% of the total vote cast for the Republican Presidential nominee in 1968, and 57.3% of the electoral college votes.

3. Plaintiffs do not contend that apportionment of delegates should be solely on the basis of Republican party strength [12] or voter turnout in previous elections. For purposes of comparison, however, if the delegates apportioned to each state under the 1972 formula represented votes cast in that state for the Republican presidential nominee in 1968, the 1972 formula would give the same representation to one Republican voter in Alaska as it would to eleven Republican voters in Illinois, California or New York; and the same representation to one Republican voter in Mississippi or Wyoming as to five Republican voters in Illinois, California or New York.

5. Similarly, plaintiffs do not contend that apportionment of delegates should be solely on the basis of population or of electoral college votes in each state.[13] For purposes of comparison,

10. Plaintiffs' tables are based on the following sources: Nomination and Election of the President and Vice President of the United States, U.S. Govt. Printing Office, Washington, D.C. 1968; Report of the Delegates and Organization Committee to the Republican National Committee, at 76–79; 91; 1970 Census of Population: Final Population Counts, 3; and Politics In America, 91 (4th ed. 1971).

11. California, New York, Pennsylvania, Texas, Illinois, Ohio, Michigan, and New Jersey.

12. Party strength as measured by voter turnout in preceding elections has been rejected as the exclusive basis for apportionment of delegates to national political conventions, Bode et al. v. National Democratic Party et al., 146 U.S.App. D.C. 373, 452 F.2d 1302 (1971). At the same time the Court held that the formula for apportionment of delegates adopted

by the Democratic party, which allotted 46% of the delegates to the 1972 convention on the basis of prior party strength and approximately 54% to the states under the electoral college standard of distribution, would not deprive any person of equal protection of the laws. Id.

13. In the Georgia case, supra note 1, the Court held that a formula for apportionment of convention delegates based solely on segments of national population as nearly equal as is mathematically possible, would not have a rational basis insofar as it would completely ignore the factor of party strength or voter turnout in previous elections. As the Court there stated:

While population may be an appropriate measuring rod when public officials are to be elected and held responsible to the entire citizenry, population alone is an inappropriate test of representation

however, with a formula which would be based solely on population, the apportionment of delegates under the 1972 formula results in deviations in representation among the states as great as eight to one.[14] A comparison of the 1972 formula with a formula based solely on 1972 electoral college votes indicates that the 1972 formula underrepresents the eight most populous states by seven to twenty percent or an aggregate of seventy five delegates, while Alaska, Delaware, Nevada, North Dakota, Vermont and Wyoming are each over-represented by 71.4%; and Hawaii, Idaho, Montana, New Hampshire, New Mexico, South Dakota and Utah are each over-represented by 40%.

## II.

Plaintiffs' challenge in this action to the constitutionality of the 1972 formula for apportionment of delegates to the Republican national convention is based on two recent decisions in this jurisdiction and on the reapportionment decisions of the Supreme Court cited there-

in. State of Georgia et al. v. National Democratic Party et al., 145 U.S.App. D.C. 102, 447 F.2d 1271, cert. den. 404 U.S. 858, 92 S.Ct. 109, 30 L.Ed.2d 101 (1971); Bode et al. v. National Democratic Party et al., D.C.Cir., 452 F.2d 1302 (1971), cert. den. 404 U.S. 1019, 92 S.Ct. 684, 30 L.Ed.2d 668 (1972).[15]

In *Georgia*, the plaintiffs challenged the apportionment formulas for the 1972 national conventions of both the Democratic and Republican parties as violative of the Equal Protection clause of the Fourteenth Amendment to the Constitution because neither formula was based solely on population in conformity with a one man, one vote standard. In *Bode*, the plaintiffs challenged the apportionment formula for the 1972 Democratic national convention as violative of the same constitutional provision because that formula was not based solely on demonstrated party strength measured by an average of the number of votes cast for the Democratic presidential nominee in the three immediately preceding presidential elections. Although

in the framework of national politics where parties compete for membership. *Id.*, 447 F.2d at 1278–1279.

The Court, however, did not "assert that population may never be an appropriate factor in party convention delegate allocation." *Id.* at 1280.

The electoral college vote is partially a function of population in each state insofar as that vote represents Congressional districts which are reapportioned on the basis of the decennial census. The electoral college vote does not, of course, provide equal representation for equal segments of population in each state. Two electors are allotted to each state in recognition of that state's two members of the United States Senate. Thus, two of each state's electoral votes are allotted with no relation whatever to the state's population. Equal representation of segments of population is further distorted by the deviation in total population among Congressional districts. The total population represented by each electoral vote in the states varies from a low of 100,724 persons per electoral vote in Alaska, to a high of 443,677 per electoral vote in New York. Total population represented per electoral vote in the ten most populous states is over 400,000; whereas total pop-

ulation represented per electoral vote in the ten least populous states ranges from 100,000 to 200,000. Thus, the electoral college standard of distribution vis-a-vis total national population is weighted in favor of smaller, less populous states.

The Court in *Bode, supra* note 12, held that an apportionment of 54% of the delegates to the 1972 Democratic national convention on the basis of electoral college votes in the states would not violate the equal protection of the laws guaranteed by the Fourteenth Amendment.

14. Thus, under the 1972 formula each delegate from Texas would represent 215,322 persons in that state, while each delegate from Alaska would represent 25,181 persons from that state. On the average, each delegate at the convention would represent 152,198 persons.

15. The Court in *Georgia, supra,* 447 F.2d at 1275, pointed out that the few courts in other jurisdictions "that have passed on the precise question—whether the state's *delegate*-selection processes are imbued with the same quality of state action found in *candidate*-nomination processes—are divided. . . ." See the cases cited therein at 1275, n. 7.

the Court in both *Georgia* and *Bode* rejected the exclusive bases for reapportionment put forth by the plaintiffs in those cases,[16] the Court did find that there is sufficient state involvement in the selection of delegates to national political conventions to subject the acts of those conventions to the constitutional standard of equal protection of the laws. As the Court stated in *Georgia*:

> [I]f the action of the individual state parties in selecting delegates to participate in the presidential-nominating process constitutes state action, the collective activity of all the states' delegates at the national convention can be no less readily classified as state action. 447 F.2d at 1275.

The Court in *Georgia* and *Bode* confronted the threshold question of justiciability and held that the apportionment of delegates to a national nominating convention presents a justiciable question. As the Court in *Georgia* concluded:

> The principle which renders the questions raised in this litigation justiciable is that courts are competent to scrutinize the allocation schemes promulgated by the national parties in order to determine whether, given the context of political partisanship out of which such formulas necessarily arise, substantial deviations from equality of voting power at the Conventions are supported by legitimate justifications. 447 F.2d at 1278.

The Court cited Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), for the proposition that:

> Judicial standards under the Equal Protection Clause are well developed and familiar, and it has been open to courts since the enactment of the Fourteenth Amendment to determine, if on the particular facts they must, *that*

*a discrimination reflects no policy, but simply arbitrary and capricious action.* [369 U.S.] at 226, 82 S.Ct. 691 (Emphasis supplied). 447 F.2d at 1277.

The courts are therefore competent to consider rational policy justifications for departures from strict equality in voting power and are not restricted to a criterion of mathematical equality.[17]

> Absent unconstitutional classifications based on race, religion, sex or economic status, deviations from mathematically precise equality of voting power may be allowed to further some reasonable countervailing policy, Swann v. Adams, 385 U.S. 440, 444, 87 S.Ct. 569, 17 L.Ed.2d 501 (1967); Abate v. Mundt, 403 U.S. 182, 91 S.Ct. 1904, 29 L.Ed.2d 399 (1971). *Bode, supra,* 452 F.2d at 1305.

It is only the "lack of a rational basis for drawing distinctions between groups of citizens which leads to judicial imputation of the one man, one vote requirement." *Georgia, supra,* 447 F.2d at 1277.

Going beyond the questions of state action and justiciability, the Court in *Georgia* and *Bode* further defined the constitutionally permissible limits of delegate selection for the national party conventions. In summary, the Court rejected formulas based exclusively on population or party strength and, in *Bode,* approved a formula based on both population (electoral college votes) and party strength.[18]

The instant case presents a question of first impression in this jurisdiction. The precise question before this Court is whether the uniform allocation of six bonus delegates to each of the forty-three states qualifying for them, or a total of twenty percent of the 1,346 dele-

16. See notes 12 and 13, *supra.*

17. In contexts other than national party conventions, the Supreme Court has permitted deviations from a one man, one vote formula, where such deviation was incident to the effectuation of some rational policy. See, e. g., Whitcomb v. Chavis, 403 U.S. 124, 91 S.Ct. 1858, 29 L.Ed.2d 363 (1971); Gordon v. Lance, 403 U.S. 1, 91 S.Ct. 1889, 29 L.Ed.2d 273 (1971); Burns v. Richardson, 384 U.S. 73, 86 S.Ct. 1286, 16 L.Ed.2d 376 (1966); Fortson v. Dorsey, 379 U.S. 433, 85 S.Ct. 498, 13 L.Ed.2d 401 (1965).

18. See notes 12 and 13, *supra.*

gates to the 1972 Republican national convention, in the context of a formula which allocates the remaining eighty percent of the delegates on the basis of 1972 electoral college votes, is based on reasonable policy considerations justifying the deviations in equality of voting power at the convention, described above in Part I of this opinion.

Defendants contend that the 1972 formula is constitutionally unexceptionable and represents an attempt to accommodate competing interests within the Republican Party without resulting in invidious discrimination against any state or group of states.[19] The policy considerations justifying the award of bonus delegates, they argue, is that in the context of the electoral college system, there is no substitute for victory. Regardless of the number of votes cast for the Republican presidential nominee in any state, only a majority of the state's popular vote entitles a nominee to the electoral votes from that state.[20] The 1972 formula rewards the smaller and middle-size states, measured in terms of population, which consistently produce Republican victories by giving those states greater influence at the national convention. Defendants maintain that the 1972 formula, substantially the same as the one adopted and in use since 1948, has been instrumental in building a strong Republican organization on a national scale.[21]

In support of their contention that the method of awarding bonus delegates results in no invidious discrimination, defendants compare each state's electoral college strength with its strength at the convention under the 1972 formula. Such a comparison indicates that the difference between any state's percentage of the total electoral college vote and its percentage of delegates at the convention under the 1972 formula is insignificant.[22] Defendants also compare each state's strength at the convention under the 1972 formula with its strength under a hypothetical formula that would eliminate bonus delegates completely, reducing the total number of delegates at the convention to 1,088 instead of 1,346, and apportioning all of the 1,088 delegates exclusively on the basis of electoral college votes. Again such a comparison indicates that the mere elimination of all bonus delegates results in relatively little differ-

19. It should be noted that the position taken by the Republican State Committee of Delaware and the Republican State Central Committee of Wyoming in their *amicus curiae* brief is the same as that taken by defendants.

20. In the 1968 presidential election, for example, a majority of the popular vote was cast for the Republican nominee in Delaware and Wyoming, whereas a majority of the popular vote in New York was cast for the Democratic nominee. Thus, 96,174 Republican votes in Delaware and 70,927 votes in Wyoming did more to elect the Republican nominee than 3,007,932 votes in New York; 2,090,017 in Pennsylvania; 1,227,844 in Texas; and 1,370,665 in Michigan.

21. The 1972 formula allocates six bonus delegates not only to each state which cast a majority of its popular vote for the Republican nominee in the 1968 presidential election, but also to each state which elected in any year from 1968 to 1971 a Republican Senator, Governor, or majority of the state's membership in the House of Representatives. See note 9, *supra.* Defendants contend that the award of bonus delegates to states with Republican victories in any of the foregoing elections is justified because such victories strengthen the Republican party in that state by reason of the party's increased influence at the state and national level and the appointment of Republicans to offices within the state.

22. The following are examples of the differences in a given state's influence in the electoral college and at the 1972 convention:

California's 1972 electoral votes account for approximately eight percent of the total electoral college vote; under the 1972 formula, California's delegates account for approximately seven percent of the total convention delegation. The figures for New York are seven and six percent respectively; for Texas approximately five and four percent respectively. For every other state, the difference between the two figures is considerably less than one percent.

ence in any single state's strength at the convention.[23]

The foregoing comparisons suggested by defendants fail to show the absence of invidious discrimination in the 1972 formula for two reasons:

1. The comparisons do not take into account the cumulative differences in relative strength at the convention among groups of states as opposed to any individual state;

2. More importantly, the comparisons suggested above are based on the premise that an apportionment formula based exclusively on the states' electoral college votes would be constitutionally unexceptionable.

But a formula based exclusively on the electoral college standard of distribution is, except for the number attributed to Senators, essentially a formula based exclusively on population.[24] Such a formula has been rejected by the Court in *Georgia, supra*, and this Court finds no substantial difference between a formula based solely on population and one based solely on the electoral college standard of distribution. The 1972 formula, therefore, cannot be defended on the ground that the award of bonus delegates causes only insignificant changes in a formula based otherwise entirely on each state's electoral college votes.

Although the 1972 formula cannot be defended by showing that it is based essentially on electoral college votes and that bonus delegates do little to disturb that basis, defendants are correct in asserting that the electoral college system of electing the President gives rationality to some reward at the convention for carrying a state in the election. In presidential elections, millions of votes for one nominee can be completely wasted unless they add up to a majority of all the votes cast in a state. Similarly, in elections for United States Senators, Representatives and State Governors, a state party's influence is not measured in numbers of votes cast but in offices won. Achieving election victories, then, is clearly a legitimate goal which can be promoted by rewarding states which produce election victories with increased influence at the national party convention.

The uniform allocation of six bonus delegates to states qualifying for them under the 1972 formula is actually the only recognition that formula gives to Republican party strength or success in elections. The rest of the formula, as has been stated above, apportions delegates on the basis of electoral votes, or virtually on the basis of population.

Although defendants contend that the present bonus system legitimately rewards those states which consistently produce Republican victories and thus provides an incentive to produce more victories, it does so unnecessarily at the expense of the larger states. The present bonus system rewards states which have *in the past* consistently produced Republican victories by giving them greater influence in nominating candidates and determining party policy at the national convention. The present bonus system, however, does not provide a corresponding incentive to the larger states to produce consistent Republican victories, despite the proportionately greater number of electoral college votes and elective offices that such victories would bring within the Republican camp.

A bonus system which would reward states producing Republican victories by

23. Under the 1972 formula, California's delegates constitute approximately seven percent of 1,346 delegates at the convention; under a hypothetical formula which would eliminate all bonus delegates, California's delegates would constitute approximately eight percent of the 1,088 delegates at the convention. The figures for New York are approximately six and seven percent respectively; for Texas approximately four and five percent respectively. For every other state, the difference between the two figures is considerably less than one percent.

24. The deviations from a pure population standard inherent in the electoral college standard of distribution are discussed at note 13, *supra*.

allocating a number of delegates reasonably proportionate to the state's electoral college vote or the number of Republican votes which produced the victory, or some combination of these factors, would have greater rationality both in terms of the decisions of the Courts discussed above and the very policies which defendants wish to promote by awarding bonus delegates.

### III.

Plaintiffs seek a declaratory judgment that:

(1) The apportionment of delegates to the 1976 Republican national convention in accordance with a formula which is the same as the 1972 formula would not meet constitutionally permissible standards;

(2) Constitutionally permissible standards for the apportionment of delegates permit:

(a) The apportionment of a substantial number of delegates, which may but need not exceed a majority thereof, on the basis of the strength of the Republican party in each state and the District of Columbia, determined as provided in (3) below.

(b) The apportionment of the remaining delegates on the basis of the electoral college vote or total population of each state and the District of Columbia according to the latest census.

(c) The apportionment of such nominal number of delegates to each of the Territories as does not exceed the lesser of (x) the number of delegates to which a Territory would be entitled on a population basis and (y) the smallest number of delegates apportioned to a state.

(3) Constitutionally permissible standards for measuring Republican strength in each state and the District of Columbia are the Republican vote for the Republican candidate in one or more recent elections for one or more of the Presidident, Governor, Senator, or members of the House of Representatives.

Plaintiffs also ask this Court to enjoin defendants from adopting at the 1972 convention a formula for 1976 which is the same as the formula for 1972, or any other formula which does not result in an apportionment substantially the same as that suggested by plaintiffs above in their request for declaratory relief.

Plaintiffs in effect ask this Court to dictate to the Republican party a formula which is substantially the same as that adopted by the National Democratic Party for its 1972 convention and approved by the Court in Bode, *supra*. This Court, however, will not dictate to the Republican party any formula which would result in such a sweeping revision in the apportionment of delegates to its national convention. Revision of the 1972 formula to meet constitutionally permissible standards in light of the decisions of the Courts in *Georgia* and *Bode, supra,* and in this case, may safely be left to the Republican National Party at its 1972 convention.

Plaintiffs' motion for summary judgment and its request for declaratory and injunctive relief is granted to the extent that this Court declares:

■ (1) That the allocation of a uniform number of bonus delegates to states qualifying for them, in the context of a formula which allocates the remaining delegates on the basis of electoral college votes, does not meet constitutionally permissible standards in that it violates the Equal Protection Clause of the Fourteenth Amendment;

■ (2) That a bonus system which would reward states producing Republican victories in certain specified elections, by allocating a number of delegates reasonably proportionate to the state's electoral college votes or the number of Republican votes which produced the victory, or some combination of these factors, would have a constitutionally rational basis.

As to the eleven delegates distributed among the Territories, the decision in *Bode, supra,* is controlling. The Court there declared that:

> . . . aside from the *de minimus* argument, we uphold it [the allocation of 16 delegates to the Territories in the Democratic formula] as an appropriate recognition of the interest of the territorial citizens in who are to be the candidates for their President and Vice-President, notwithstanding they have no vote in the election. 452 F.2d at 1310.

An Order will be entered granting plaintiffs' motion for summary judgment to the extent stated above and enjoining the defendants from adopting at the 1972 convention a formula for apportionment of delegates to the 1976 convention which would allocate a uniform number of bonus delegates to qualifying states, with no relation to the state's electoral college votes, Republican votes cast, or some combination of these factors.

The present action is ripe for declaratory and injunctive relief at this time. Although defendants have not yet adopted a formula for 1976 substantially similar to that adopted for 1972, there is every reason to believe that they will do so at the 1972 convention, both because the 1972 formula is substantially the same formula that has been adopted at every convention since 1948 and because defendants maintain here that the 1972 formula is constitutionally unexceptionable.

Rather than attack the apportionment of delegates at the 1972 convention itself, at a time when the call for 1972 delegates as adopted by the 1968 convention was about to issue, the parties chose by stipulation to avoid the chaos that would have resulted from challenging the makeup of the 1972 convention on such short notice. The stipulation provided that plaintiffs would focus their challenge on the formula for apportionment of delegates to the 1976 convention, to be adopted at the 1972 convention. The Court approved the stipulation of the parties entered into shortly after plaintiffs filed their initial complaint. In approving the stipulation and in granting at this time the relief outlined above, the Court is following a procedure approved by the United States Supreme Court in Moore v. Ogilvie, 394 U.S. 814, 816, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969) and Reynolds v. Sims, 377 U.S. 533, 585–586, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) and followed by the District Court in Maxey v. Washington State Democratic Committee, 319 F.Supp. 673, 677–678 (W.D. Wash. 1970).