Ted SIFF et al., Plaintiffs-Appellants,

v.

The STATE DEMOCRATIC EXECU-
TIVE COMMITTEE et al.,
Defendants-Appellees.

No. 74-3123.

United States Court of Appeals,
Fifth Circuit.

Aug. 22, 1974.

Alan Weil, David R. Richards, Austin, Tex., Stuart Nelkin, Houston, Tex., for plaintiffs-appellants.

George D. Byfield, Shannon H. Ratliff, Austin, Tex., for defendants-appellees.

Before GOLDBERG, MORGAN and GEE, Circuit Judges.

GEE, Circuit Judge:

Texas Law [1] sets major political party conventions on the third Tuesday in September. This year, and not again this century, the Jewish High Holy Days of Rosh Hashana commence on that day. Plaintiffs are eleven convention delegates adhering to the Jewish faith, who have sought a short postponement of the convention to avoid this conflict from the State Democratic Executive Committee (SDEC) and from the District Court without success and who now bring to us their claims of constitutional infringement.

I. PROCEDURAL POSTURE

 Appellants seek an injunction pending appeal from the district court's

___

1.  Tex. Election Code Ann. art. 13.35, V.A.T.S. (1967).

order which in effect denied their request for a preliminary injunction.[2] They also seek to advance the case for an expedited hearing on their appeal and a decision on the merits. "[C]onsidering the advantages to the parties and to the public of deciding the appeal before the date of the scheduled [convention]," we have decided to treat the cause "as an expedited appeal on the merits from the denial of the preliminary injunction." Mississippi Freedom Democratic Party v. Democratic Party, 362 F.2d 60, 61 (5th Cir. 1966). For reasons set out below, we are unconvinced the district court committed an abuse of discretion in denying the request for injunctive relief, and accordingly, we deny the request for further relief and affirm.

## II. JUSTICIABILITY

■ Appellees question the justiciability of this case, relying on O'Brien v. Brown, 409 U.S. 1, 92 S.Ct. 2718, 34 L.Ed.2d 1 (1972), and the order of Mr. Justice Rehnquist in Republican State Central Committee of Arizona v. Ripon Society, Inc., 409 U.S. 1222, 93 S.Ct. 1475, 34 L.Ed.2d 717 (1972) (the district court's decision in the case appears at 343 F.Supp. 168). Despite our hearty concurrence in the Court's reservations expressed there about interfering in intra-party affairs, we do not think those decisions stay our hand in the case *sub judice.*

In *O'Brien* the Court concluded that the Democratic National Convention was the proper forum for the determination, at least in the first instance, of internal party disputes over which delegates to seat. The Court certainly did not imply that delegates could be unseated or not

seated based on constitutionally suspect grounds, but it did indicate that the initial decisions regarding delegate credentials were peculiarly matters for party consideration. The Court noted also that the plaintiffs' complaints might well be resolved by the Convention, so that pre-convention judicial interference was inappropriate.

■ Here, by contrast, plaintiffs assert as unconstitutional an SDEC action which, if unremedied, will preclude them from ever arriving at the convention. Of course, the majority of the delegates might, upon convening, vote a recess to accommodate the Jewish delegates, thus relieving plaintiffs from their dilemma; however, the Supreme Court has made clear on many occasions that matters guaranteed by the Bill of Rights, such as freedom of religion, are not to depend on majority vote. *E. g.*, West Virginia State Board of Education v. Barnette, 319 U.S. 624, 638, 63 S.Ct. 1178, 1185, 87 L.Ed. 1628 (1943). If plaintiffs are correct that holding the convention on Rosh Hashana would deny them the right to free exercise of their religion, they are entitled to pre-convention relief; they need not depend on vagaries of the convention vote, for by then relief from the courts would be impossible. Moreover, bringing suit after the convention would risk almost certain dismissal for mootness. Thus plaintiffs are entitled to be heard at this time on their constitutional claims. They have alleged an injury to one of the most precious of all those rights protected by the Constitution, not to "relationships of great delicacy that are essentially political in nature." *O'Brien,* supra, 409 U.S. at 4, 92 S.Ct. at 2720, 34 L.Ed.2d at 5.[3]

---

2.  McCoy v. Louisiana State Bd. of Educ., 345 F.2d 720, 721 (5th Cir. 1965); Dilworth v. Riner, 343 F.2d 226, 229 (5th Cir. 1965).

3.  For more on judicial review and intervention in party matters, *see generally* Bode v. National Democratic Party, 146 U.S.App.D. C. 373, 452 F.2d 1302 (1971), cert. denied,

404 U.S. 1019, 92 S.Ct. 684, 30 L.Ed.2d 668 (1972); Georgia v. National Democratic Party, 145 U.S.App.D.C. 102, 447 F.2d 1271, cert. denied, 404 U.S. 858, 92 S.Ct. 109, 30 L.Ed.2d 101 (1971); Ripon Society, Inc. v. National Republican Party, 369 F.Supp. 368, 372–373 (D.D.C.1974).

## III. DENIAL OF INJUNCTIVE RELIEF

The district court's exercise of discretion in denying the preliminary injunction must be reviewed in terms of the four prerequisites for the extraordinary relief of preliminary injunction. *See* Canal Authority v. Callaway, 489 F. 2d 567, 572 (5th Cir. 1974). Here we focus primarily on one of the four—the requirement that plaintiffs demonstrate a substantial likelihood of prevailing on the merits. Plaintiffs-appellants are of course correct that a sliding scale must be applied in considering the probability of plaintiffs' winning on the merits and plaintiffs' irreparable injury in the absence of interlocutory relief. We disagree with appellants, however, on the likelihood that they would prevail on the merits; nor can we deny severe injury would be done defendants by the granting of such relief. Therefore since we do not believe appellants carried the burden of showing a probable victory, we conclude that the court below did not abuse its discretion.

No claim is made that the law in question was adopted with any improper motive; this contretemps results from the entirely neutral functioning of the lunar and Gregorian calendars. Plaintiffs assert, however, and the evidence indicates, that the SDEC had the power and could[4] with significant but not disabling inconvenience to the other 5,000-plus delegates and to existing convention arrangements have postponed the transaction of any significant business pending return of the worshipping minority. In failing to do so, say plaintiffs, the SDEC deliberately put them to an impermissible choice: whether to forego observance of one of the two holiest religious occasions of the Jewish year, or to quit the representative[5] posts to which they had been elected during critical parts of the convention. The SDEC replies that these delegates must have realized the conflict when they stood for election and that by asserting a right to have nonadherents and unbelievers conform to their religious occasions they seek of the state not neutrality, but preferment.

We lay aside at the outset two mainly irrelevant considerations, the feasibility of moving the convention dates and the Jewish delegates' knowledge of the conflict before standing for election as delegates. If these delegates have a right that the convention be held on a date which does not conflict with Rosh Hashana, they have a right upon their election to require that the date be changed if it is *possible*, not merely convenient, to do so. Nor is it our place to lament the quality of judgment which has materialized this matter before us for resolution on cold law. Here it is, resolve it we must. We conclude the court below did not err and affirm denial of the preliminary injunction.

Plaintiffs pitch their case upon the Free Exercise Clause, as made applicable to the states by the Fourteenth Amendment. No claim is made, however, that plaintiffs' beliefs are being inquired into or proscribed in any way, nor are plaintiffs being forced or ordered to take any action at variance with their religious convictions. Finally, it is undisputed that the conflict in dates resulted from the workings of a religiously-neutral and valid law, not enacted with any invidious purpose.

What plaintiffs seek in fact is that this court require the state[6] and numer-

---

4. By the device of adopting a temporary rule for the year 1974 only requiring a recess of the convention after its convening on the statutory day during the two-day Rosh Hashana period. Party rules grant such power to the SDEC. Rules of the Democratic Party of Texas, Art. V, § 2.2 (1974).

5. Appellants argue that the importance of their presence at the convention is increased by virtue of the representative capacity in which they serve. We note only that alternates are elected in order to protect, at least partially, the interests of delegates' constituencies in the case of absence by the delegates.

6. No party contends that we do not here deal with state action.

ous other citizens to defer to plaintiffs' religious convictions by postponing, in consideration of those convictions, activities in which plaintiffs wish to participate on the two days involved here. It goes without saying that plaintiffs have good claim upon the sympathy and discretion of the SDEC and of their fellow delegates; the question is whether they have demonstrated a likelihood of prevailing in their assertion of a constitutional veto. So to hold would be to go far beyond any authority to which we have been directed and, we think, beyond the reason of the matter as well.

No purpose to single out or penalize plaintiffs' religious observances is shown, merely a refusal to defer to them. We think on these facts that plaintiffs would have to be content with a state neutrality [7] which blindly fixes dates that may fall on Ash Wednesday, in Ramadan, on Good Friday, on Yom Kippur, or as here. Though various faiths may suffer such unpleasant choices as confront plaintiffs here, the even chances of a selection by lot should equalize burdens over the long haul. To rule otherwise would not only transgress the neutrality envisioned by the First Amendment but would condemn the state to endless uncertainties and frustrations. Countless state functions are scheduled throughout the year: accounting, bar, and medical examinations; legislative and court sessions; highway lettings; in short, the entire panoply of public affairs. To permit a would-be participant in any of these to *require* its rescheduling on constitutional grounds to remove a conflict with his religious occasions, where it was scheduled without reference to or intent to impinge upon them, would render orderly government impossible. Yet a holding that plaintiffs possess such rights as they here claim would leave no stopping place short of this. Surely the balance cannot

be resolved to so disturb the functioning of our governmental system. Stressing again that we are not certain of the merits of plaintiffs' claims, but are only pointing to the difficulty of predicting success on the merits, we affirm denial of the preliminary injunction.

Affirmed.

GOLDBERG, Circuit Judge (specially concurring):

We have determined that the uncertainty shrouding plaintiffs' constitutional position justified the trial court in denying plaintiffs' pleas for temporary injunctive salvation. This constitutional uncertainty will survive our decision. *See* Smilow v. United States, 2 Cir. 1972, 465 F.2d 802, 804, vacated on other grounds, 409 U.S. 944, 93 S.Ct. 268, 34 L.Ed.2d 215. No such uncertainty obscures the fact that the SDEC could have amended the party rules to avoid the serious and sincere objections voiced by plaintiffs. And I shall let no uncertainty mantle my nonconstitutional opinion of the SDEC's incredible refusal to do so.

State and local governments and political parties, ever ready to decry and denounce Federal judicial invasion of their bailiwicks, should display some sensitivity to the letter of the Constitution. But even when they have committed no transgression of the letter, they ought also to be sensitive to the precious spirit embodied in the Constitution. The intrusion on religious practice here was aleatory: it was coincidental, not purposive, transitory, not permanent. The intrusion on religious sensibility was less evanescent—it was, in fact, a grievous trampling on the feelings of these plaintiffs and their co-religionists. The utter obviousness of this fact might have provoked the SDEC to go an inch beyond the constitutional last mile in order

---

7. Johnson v. Robison, 415 U.S. 361, 94 S.Ct. 1160, 1174, 39 L.Ed.2d 389, 407–408 (1974); Gillette v. United States, 401 U.S. 437, 462, 91 S.Ct. 828, 842–843, 28 L.Ed.2d 168, 187–188 (1971). For a discussion of the distinct situation here faced—withholding benefits, rather than compelling action—*see* Clark, Guidelines for the Free Exercise Clause, 83 Harv.L.Rev. 327, 359–60 (1969).

to accommodate the convention date to the religious scruples of the minority.

This Court cannot say that the trial court was in error in not forcing the SDEC to live up to its platform shibboleth of religious freedom and equality. But if this is a case in which the law stays the Court's arm, the judicial restraint should be no cause for jubilation. When members of a respected religion are, even temporarily and unintentionally, excommunicated from an important part of the political process, all citizens sensitive to the rights of minorities and to the precious freedoms vouchsafed in the Constitution should weep. Objectively the injury to the political process may here be epidermal; subjectively we know the wounds are far deeper.

The judicial arm does not have the muscle to lift every stone cluttering the political pathway. Other arms of our political system do have the strength. Unless they exercise their muscles, democratic atrophy will surely follow.