**GORE NEWSPAPERS COMPANY, a corporation, Plaintiff,**

**v.**

**Robert L. SHEVIN et al., Defendants,**

**Sentinel Star Company, Intervenor,**

**The Miami Herald Publishing Company, Intervenor.**

**No. FL 74–103–Civ–NCR.**

United States District Court, S. D. Florida, Fort Lauderdale Division.

June 19, 1975.

**1254**

Fleming, O'Bryan & Fleming, Rex Conrad, Fort Lauderdale, Fla., Kirkland & Ellis, Don H. Reuben and Lawrence Gunnels, Chicago, Ill., for plaintiff.

Robert L. Shevin, Atty. Gen., State of Florida, Tallahassee, Fla., Philip S. Shailer, State's Atty., Ft. Lauderdale, Fla., for defendants.

Mateer & Harbert, by Ronald A. Harbert, Orlando, Fla., for Sentinel Star Co., plaintiff-intervenor.

Paul & Thomson by Dan P. S. Paul, Miami, Fla., for Miami Herald Pub. Co., plaintiff intervenor.

## MEMORANDUM OPINION DECLARATORY JUDGMENT

ROETTGER, District Judge.

Plaintiff and intervenors publish daily and Sunday newspapers in the State of Florida and seek a declaratory judgment holding that each of two Florida statutes are unconstitutional on its face as violating the First and Fourteeth Amendments to the United States Constitution. One statute requires newspapers to charge political candidates the lowest local advertising rate and the other forbids the distribution of any writing against any candidate on Election Day.

### IS A THREE-JUDGE COURT REQUIRED?

Plaintiff specifically seeks only declaratory relief and insists the convening of a three-judge court is unneces-

sary. The State asserts the effect of declaratory relief, if in favor of plaintiff, is virtually the same as an enjoining of the operation of the statutes.

In oral argument plaintiff asserts a decree in its favor would be persuasive authority in the event there is a state criminal prosecution against a newspaper charged with violating either statute. Certainly a decision of this court would not be binding authority on any state court. Consequently, this judgment is not truly injunctive in effect. The court must observe that plaintiff in its efforts to avoid the Scylla of injunctive relief steers perilously close to the Charybdis of an advisory opinion, except with respect to defendant Shailer as to the plaintiff and intervenors.

The court concludes it has jurisdiction, sitting alone, to determine the declaratory relief issues. *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Steffel v. Thompson,* 415 U. S. 452, 94 S.Ct. 1209 at 1214 n. 7, 39 L. Ed.2d 505 (1974); *Mitchell v. Donovan,* 398 U.S. 427, 90 S.Ct. 1763, 26 L.Ed.2d 378 (1970).; *Kennedy v. Mendozo-Martinez,* 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed. 2d 644 (1962); *Riddell v. National Democratic Party,* 508 F.2d 770 (5th Cir. 1975); *Triple A Realty Inc. v. Fla. Real Estate Comm.,* 468 F.2d 245 (5th Cir. 1972).

### UNDISPUTED FACTS

Plaintiff Gore Newspapers Company publishes daily and Sunday newspapers of general circulation in this district known as the *Fort Lauderdale News* and *Pompano Beach Sun Sentinel.* Intervenor Sentinel Star Company publishes a daily and Sunday newspaper of general circulation primarily in the Middle District of Florida known as the *Orlando Sentinel Star* and the intervenor Miami Herald Publishing Company publishes the *Miami Herald* a newspaper of general circulation which is distributed in Miami, Fort Lauderdale and elsewhere throughout the state.

Defendant Robert L. Shevin, Attorney General of the State of Flor-

ida, has rendered Opinion No. 73–334, asserting the constitutionality of Section 106.16, Florida Statutes, and Opinion No. 074–51 asserting both the constitutionality of Section 104.35 and its clear application to plaintiff and intervenors. Defendant Philip S. Shailer, State Attorney for the Seventeenth Judicial Circuit of Florida, has, by letter of May 17, 1974, asserted his intent to enforce both statutes and to institute criminal prosecutions for violations of them. The case is ripe for summary judgment.

Plaintiff and intervenors assert that the lowest contract rate they charged to advertisers are those who commit to the purchase of as much as 25,000 column inches during the contract year. The papers charge political candidates under the same advertising rate schedule that they use for commercial and other advertisers. That contract rate schedule is based on the volume of the customers' advertising, the lineage (number of column-inches) requested by the advertiser, the location of the advertisement in the newspapers, whether special art work or printing techniques are required and other considerations.

Each paper contends that it publishes material in its Election Day edition which may include attacks on political candidates or material which might be considered to be "against" a candidate. Although the *Miami Herald* asserts its policy is to avoid publishing new attacks concerning political candidates on Election Day it claims the editorial right to do so if it feels that publication of the material would fulfill what it deems to be its obligation to inform the public of facts bearing on election issues or can-

didates. The paper admits that it includes political advertising on Election Day which republishes old charges as well as including adverse information as to candidates which are raised earlier in the campaign. Election Day summaries are also published which may include adverse comment on a particular candidate's qualifications.

## THE POLITICAL ADVERTISING RATE STATUTE

In 1973 the Florida Legislature passed a comprehensive campaign financing law as Chapter 106 of the Florida Statutes, with over thirty sections in the chapter. Plaintiff attacks one section which sets forth "limitations from certain rates and charges".[1] In short, the statute forbids publishers and broadcasters from charging a political candidate any more than the lowest local rate available to advertisers. The statute also requires that no political candidate be charged a higher rate than any other political candidate; however, this portion of the statute has not been attacked by plaintiff and, consequently, this decision will not deal in any way with that portion of the statute.

A violation of Section 106.16 exposes a corporation to a fine of $10,000 and forfeiture of its right to do business in the state. Section 106.15(3). If the broadcaster or publisher is an individual, or an officer or employee of the corporation found to have violated the statute he shall be deemed to be guilty of a misdemeanor of the first degree and subject to imprisonment for one year or a fine up to $1,000 or both. § 106.15(4) and (5).

---

1. § 106.16(1) No person or corporation within the state publishing a newspaper or other periodical or operating a radio or television station or network of stations in Florida shall charge a candidate for state or county public office for political advertising or for political broadcasts at a rate in excess of the lowest local rate available to advertisers otherwise qualifying for maximum frequency discounts, bulk discounts, and advertising packages, including any cash discounts allowed: nor shall such a person or corporation charge one

political candidate in a county a higher rate than another political candidate; and no candidate or political committee shall pay for political advertising or broadcasts any rate or charge in excess of the lowest local rate available to advertisers otherwise qualifying for maximum frequency discounts, bulk discounts and advertising packages, including any cash discounts allowed.

(2) Violations of this section are punishable as provided in § 106.15(3), (4), and (5) [F.S. 1973].

Plaintiffs criticize the statute as adopted by politicians to give politicians a preferred status; the State asserts that the statute was adopted as a valid exercise of police power with the obvious purpose of insuring that candidates who lack substantial financial backing may have access to the news media at reasonable rates.

Plaintiffs claim that the political advertising rate statute imposes an unconstitutional restraint upon freedom of the press because it singles out the press for discriminatory economic regulation. They contend the economic regulation with its limitation upon advertising revenue makes the press vulnerable to be "taxed" out of existence or into silence. Plaintiffs assert that *Grosjean v. American Press Co.*, 297 U.S. 233, 56 S. Ct. 444, 80 L.Ed. 660 (1936), compels a declaratory judgment that the statute is unconstitutional on its face.

In *Grosjean* the court dealt with a statute of Louisiana which provided that every publisher having a circulation of more than 20,000 copies per week shall pay a license tax of two percent of the gross receipts of the business. The District Court rendered a decree for the plaintiff newspaper publishers and the Supreme Court affirmed noting that the statute ". . . operates as a restraint in a double sense. First, its effect is to curtail the amount of revenue realized from advertising; and second, its direct tendency is to restrict circulation." *Id.* at 244, 56 S.Ct. at 447. The court also speculated that if the tax were increased to a high degree it might well result in destroying both advertising and circulation. *Ibid.*

■ However, the instant case is not the same as *Grosjean* because the statute does not compel publishers to print advertisements for political candidates. What it does compel is that the advertising rate for such political advertisements as are published must be at the lowest local advertising rate. The publishers cannot be compelled to print advertisements. *Chicago Joint Board v.*

*Chicago Tribune Co.*, 307 F.Supp. 422 (N.D.Ill.1969), aff'd 435 F.2d 470 (7th Cir. 1970), *cert. denied* 402 U.S. 973, 91 S.Ct. 1662, 29 L.Ed.2d 138 (1971); *Associates & Aldrich Co. v. Times Mirror Co.*, 440 F.2d 133 (9th Cir. 1971). Nothing in *Bigelow v. Virginia*, 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed. 2d 600 decided this week, appears to modify this principle. Consequently, the reduction in revenue does not have same inevitability as did the tax on large newspapers in *Grosjean*. The publisher may decline all political advertising if it is not sufficiently profitable or for any other reason however capricious. One must assume the cheapest rate is not an unprofitable rate. Consequently, the question boils down to this: whether a statute aimed exclusively at publishers and broadcasters is unconstitutional on its face when it compels the charging of minimal advertising rates for political candidates, thereby resulting in some, comparatively slight, loss of revenue.

As observed by the Supreme Court, generally more than two-thirds of a newspaper's total revenues flow from the sale of advertising space and "[a]dvertising is the economic mainstay of the newspaper business." *Times-Picayune Publishing Co. v. United States*, 345 U.S. 594, 604, 73 S.Ct. 872, 878, 97 L.Ed. 1277 (1953). The Supreme Court has also observed:

> "The power of a private owned newspaper to advance its own political, social, and economic views is bounded by only two factors: first, the acceptance of a sufficient number of readers —and hence advertisers—to assure financial success; and, second, the journalistic integrity of its editors and publishers." *Columbia Broadcasting System, Inc. v. Democratic National Committee*, 412 U.S. 94, 117; 93 S. Ct. 2080, 2094, 36 L.Ed.2d 772 (1973), quoted approvingly in *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241, 94 S.Ct. 2831 at 2838, 41 L.Ed.2d 730 (1974).

Any ambiguity about these tracks on the constitutional trail was dispelled by *Miami Herald Publishing Co. v. Tornillo, supra,* in which the court struck down a Florida statute compelling the newspaper to print, free of cost, any reply a political candidate wants to make if the newspaper assails his character or official record. The court held:

"Governmental restraint on publishing need not fall into familiar or traditional patterns to be subject to constitutional limitations on governmental powers. (citing *Grosjean*). The Florida statute exacts a penalty on the basis of the content of a newspaper. The first phase of the penalty resulting from the compelled printing of a reply is exacted in terms of the cost in printing and composing time and materials and in taking up space that could be devoted to other material the newspaper may have preferred to print." 94 S.Ct. at 2839.

In *Tornillo* the court felt that the cost of printing a reply was a penalty even though the newspaper could have expanded its column space infinitely to accommodate replies. The penalty in the instant case is not nearly so subtle although it too is rather small in the terms of overall impact on advertising revenue.

If the loss of revenue would prove to be significant, the newspapers might very well decide to decline all political advertising, thus severely limiting media access for all candidates whether well-heeled or running on a shoestring. The Supreme Court has considered such potential effects of a challenged statute: *Miami Herald Publishing Co. v. Tornillo, supra; Mills v. Alabama,* 384 U.S. 214, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966) and *Grosjean, supra.*

The effort of the Legislature in seeking to make the news media advertising available to candidates of whatever degree of financial backing is laudable. However commendable the purpose in the exercise of the police power by various legislatures, the Supreme Court has consistently struck down statutes which restrain the content of the publication. E. g., *Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975); *Miami Herald Publishing Co. v. Tornillo, supra; Mills v. Alabama, supra.* The fact that the restraint in the instant statute is aimed at revenue rather than content does not insulate it from the constraints of the First Amendment.

The constitutionality of a statute aimed solely at institutions protected by the First Amendment is determined by the existence of impact not whether the impact is onerous or slight. Constitutionality cannot turn on a degree of economic burden because once validated the statute's burden may be increased so as to destroy the protected activity. *Grosjean, supra* 297 U.S. at 245, 56 S.Ct. 444. Consequently the protection of the First Amendment against prior restraints by government extends to this diminution of advertising revenue.

## ELECTION DAY PUBLICATION STATUTE

Section 104.35, Florida statutes [2] has been in existence in basically this form since 1909 with no reported decisions dealing with it. Unquestionably the legislature hoped to prevent last minute "smear tactics" against candidates.[3] However, Chief Justice Burger puts such legislative desires into consti-

2. It shall be a misdemeanor of the first degree, punishable as provided in § 775.082 or § 775.083, for any candidate or other person to distribute or cause to be distributed on the day of any election any pictures, cards, literature, or other writing against any candidate.

3. In recent years this court has observed and can take notice of Election Eve and Election Day advertising which has been false and/or malicious, which has affected some important contests.

tutional focus by his observation in *Miami Herald v. Tornillo, supra*:

"a responsible press is an undoubtedly desirable goal, but press responsibility is not mandated by the Constitution and like many other virtues it cannot be legislated." 94 S.Ct. at 2839.

Plaintiffs assert that this statute founders on the decision of *Mills v. Alabama*, 384 U.S. 214, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966). In that decision the Alabama statute made it a crime to solicit any votes in support of or in opposition to any proposition on the day in which the election affecting such proposition is being held. A Birmingham newspaper carried an editorial on Election Day strongly urging the people to adopt the mayor-council form of government. The editor was arrested subsequently for publishing the editorial on Election Day.

The court minced no words in striking down the Alabama statute:

"We hold that no test of reasonableness can save a state law from invalidation as a violation of the First Amendment when that law makes it a crime for a newpaper editor to do no more than urge people to vote one way or another in a publicly held election." *Id.* at 220, 86 S.Ct. at 1437.

The State asserts that a distinction exists between the Alabama statute and the Florida statute because the Florida statute only proscribes distributing on Election Day any writing "against any candidate." The distinction has no vitality and the Florida statute falls squarely within the scope of *Mills v. Alabama*.

## CONCLUSION

Both Sections 106.16 and 104.35 of Florida Statutes are declared to be unconstitutional on their face as violating the First Amendment to the Constitution except for that portion of § 106.16 not attacked and discussed previously. A declaratory judgment is hereby entered in favor of plaintiff and intervenors.