CONCERNED DEMOCRATS OF FLORI-
DA and Edward Cohen, President of
Concerned Democrats,

v.

Janet RENO, State Attorney of Dade
County, Florida, and Robert Shevin,
Attorney General of Florida.

No. 78–3994–Civ.–NCR.

United States District Court,
S. D. Florida,
Fort Lauderdale Division.

Sept. 6, 1978.

Steven Wisotsky, Fort Lauderdale, Fla., for plaintiff.

Janet Reno, State Atty., and Robert L. Shevin, Atty. Gen., in pro. per.

### PRELIMINARY INJUNCTION

ROETTGER, District Judge.

Plaintiffs in this lawsuit, Concerned Democrats of Florida, filed suit urging this court to strike down Florida Statute § 105.-09 [1] as unconstitutional, and to enjoin the State Attorney of Dade County, Janet Reno, from enforcing that particular law.

Judges are elected at the first primary election if they receive a majority of the votes cast. If no candidate receives a ma-

---

1. Political activity in behalf of a candidate for judicial office limited . . .

    1. No political party or partisan political organization shall endorse, support, or assist any candidate in his campaign for election to judicial office.

2. Any person who knowingly, in his individual capacity or as an officer of an organization, violates the provisions of this section is guilty of a misdemeanor of the second degree, punishable as provided in § 775.082 or § 775.083.

jority in the first primary, then the determining vote is taken at the general election. Plaintiffs contend—typically, at the eleventh hour[2]—that they desire to interview candidates for judicial office and, based on those interviews, to publicize their recommendations and endorsements to the voters of Dade County. They contend that the flat prohibition of *Fla. Stat.* § 105.09 impermissibly chills their First Amendment rights to free speech; that it violates their right to political association; that it violates their right to equal protection under the laws as provided in the Fourteenth Amendment; and that it correlatively violates the rights of the Dade County voters to receive political information.

A hearing was held on August 23, 1978, where plaintiffs, Concerned Democrats and its president Edward Cohen, and both defendants were represented. Upon the basis of the law and the evidence presented at the hearing, the court concludes that plaintiff is entitled to a preliminary injunction pending final determination on the merits.

## FINDINGS OF FACT

1. Florida Statute § 105.09 enacted in 1971, punishes by fine and imprisonment any support, endorsement, or assistance given to a judicial candidate by a political party or partisan political organization.

2. The Concerned Democrats of Florida is an organization formed in 1968 and chartered by the Executive Committee of the Florida Democratic Party in 1972.[3] As such, it would fit within the definition of groups whose political activities are curtailed by the statute.

3. The Concerned Democrats comprises about 4,000 members in Florida interested in screening and endorsing candidates who are compatible with their political philosophy. Edward Cohen, its president, described the organization as "liberal Democrat" in political persuasion.

4. Mr. Cohen also testified that *but for* this particular statute, his group would interview and publish its recommendations about judicial candidates. However, because he might "go to jail" or because the liberty of some of the organization's members might be at stake, the Concerned Democrats have not endorsed judicial candidates.

Mr. Cohen also testified that the Concerned Democrats would seek to endorse judicial candidates who exhibited such traits as a good legal background and the ability to make decisions on the basis of the law. Apparently, whether the candidate opposes capital punishment, as plaintiff does, would also be considered. He testified that races for judicial office are already political, and that his group only wanted to be able to make their preferences known to the voters of Dade County.

5. The testimony of Mr. George DePontis, a political promoter and public relations professional, and of Mr. H. Lee Bauman, a judicial candidate, leads the court to find that judicial races in Florida are planned and promoted much like any other political race.

6. The expense of a primary election campaign (judges are elected in the primaries rather than in the general election) ranges from $20,000 to $50,000. A judicial candidate will be required to spend $10,000 to $15,000 more if a runoff election is required.

2. The statute was enacted in 1971 but never challenged in a reported decision (or as far as is known, in any court), and plaintiffs filed suit three weeks before the election.

3. Counsel for the Florida Attorney General argued that plaintiffs lacked standing to bring this lawsuit because they did not meet the statutory definition of political party or partisan political organization. However, counsel for defendant, Janet Reno, would not state that their office would decline to prosecute if plaintiffs proceeded to endorse judicial candidates. No facts were adduced at the hearing which relate to the plaintiff organization's legal status except the testimony of Edward Cohen which revealed his belief that Concerned Democrats of Florida were chartered by the Executive Committee in 1972. If so, and there are no facts to the contrary, then the plaintiff organization seems to fall within the range of groups defined in *Fla. Stat.* § 103.081.

7. Candidates for judicial office speak to and receive endorsements from such organizations as the AFL–CIO, the United Teachers of Dade, Fraternal Order of Police, Police Benevolent Association, Concerned Citizens of North Dade, National Organization of Women and others, such as condominium owners' associations (possibly the most effective of the endorsing organizations).

8. Judicial candidates seek to garner as much support as possible and would apparently welcome endorsements as well from political or partisan groups. However, by the operation of *Fla. Stat.* § 105.071[4], the candidate himself would still be prohibited from engaging in any partisan political party activities.

9. By operation of *Fla. Stat.* § 105.021 judicial officers in Florida are to be elected on separate non-partisan ballots.

## CONCLUSIONS OF LAW

■ 1. This court's jurisdiction is invoked pursuant to Title 28 U.S.C. §§ 1343(3), (4) and 1331. Plaintiffs' allegations that *Fla. Stat.* § 105.09 violates their rights guaranteed by the First and Fourteenth Amendments present this court with a case or controversy as required by Art. III, Sec. 2 of the United States Constitution. The parties are adverse to one another; there exists an actual controversy and the court is able to grant relief which will resolve the matter between them. *See Muskrat v. United States*, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246 (1911); *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937). It is not necessary that plaintiffs actually expose themselves to criminal prosecution. *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). The plaintiffs have a personal stake in the outcome of this case, and they are proper parties to contest the validity of this statute. *Flast v. Cohen*, 392 U.S. 98, 100–102, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947 (1968); *see also Morial v. Judiciary Commission of State of Louisiana*, 565 F.2d 295 (5th Cir. 1977).

■ 2. The principles of comity do not compel this court to abstain from considering the case. No criminal prosecution is pending, so there will be no disruption of ongoing state proceedings. If this court declines jurisdiction, then plaintiffs will be forced to forego what they believe to be constitutionally protected activities in order to avoid the harshness of a criminal prosecution. *Steffel v. Thompson, supra.*

3. The standards that apply in cases involving the granting of a preliminary injunction are well stated in *Barrett v. Roberts*, 551 F.2d 662 at 665 (5th Cir. 1977). There the court states:

> In order to obtain preliminary injunctive relief, a litigant is required to demonstrate: (a) a substantial likelihood of success on the merits; (b) a substantial threat that the plaintiff will suffer irrep-

---

4. 105.071 Candidates for judicial office; limitations on political activity

A candidate for judicial office shall not:

(1) Participate in any partisan political party activities, except that such candidate may register to vote as a member of any political party and may vote in any party primary for candidates for nomination of the party in which he is registered to vote.

(2) Campaign as a member of any political party.

(3) Publicly represent or advertise himself as a member of any political party.

(4) Endorse any candidate.

(5) Make political speeches other than in his own behalf.

(6) Make contributions to political party funds.

(7) Accept contributions from any political party.

(8) Solicit contributions for any political party.

(9) Accept or retain a place on any political party committee.

(10) Make any contribution to any person, group, or organization for its endorsement to judicial office.

(11) Agree to pay all or any part of any advertisement sponsored by any person, group, or organization wherein the candidate may be endorsed for judicial office by any such person, group, or organization.

A candidate for judicial office or retention therein who violates the provisions of this section is guilty of a misdemeanor of the first degree, punishable as provided in § 775.082 or § 775.083.

Amended by Laws 1977, c. 77–175, § 38, eff. Jan. 1, 1978

arable harm unless the preliminary injunction is granted; (c) that the threatened injury to the plaintiff if the injunctive relief is denied outweighs the possible harm to the defendants if the relief is granted; and (d) that the issuance of injunctive relief will serve the public interest. (citation omitted).

Accordingly the court will examine the facts of this case in light of the four requisites laid down by the Fifth Circuit.

4. The court concludes that plaintiffs are likely to prevail on the merits of this lawsuit. Plaintiffs have shown that the challenged statute substantially interferes with their desire to choose and endorse their choices for judicial office seekers. If this activity is protected by the First Amendment, then clearly the statute must give way. The court believes that conduct which involves scrutinizing and endorsing of political candidates is within the core of the First Amendment. Political activity has been given broad protection by the Supreme Court. The "advancement of political beliefs and ideas" is protected by the Constitution. *Buckley v. Valeo*, 424 U.S. 1, 15, 96 S.Ct. 612, 632–33, 46 L.Ed.2d 659 (1976). And the right of a group to associate for the purpose of advancing political ideas is also "a form of 'orderly group activity' protected by the First and Fourteenth Amendments." *Cousins v. Wigoda*, 419 U.S. 477, 487, 95 S.Ct. 541, 547, 42 L.Ed.2d 595 (1975). Even though some state regulations of the election process are permissible and necessary, the Supreme Court has not hesitated to strike down election laws which interfere with a newspaper's right to comment on political candidates. *See Mills v. Alabama*, 384 U.S. 214, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966); *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974). Also, *Gore Newspapers Co. v. Shevin*, 397 F.Supp. 1253 (S.D.Fla. 1975), affirmed 550 F.2d 1057 (5th Cir. 1977).

Having concluded that the statute substantially interferes with constitutionally protected activity, the court must now consider the state's interest in passing this statute, and if it can withstand constitutional scrutiny under the applicable standard of constitutional review. Counsel for the Florida Attorney General's office contended the State's interest was in maintaining the integrity and impartiality of the state judiciary. He contended the statute would inhibit domination of judges by political parties and politically partisan groups. The court agrees that maintaining the integrity and impartiality of the state judiciary is a compelling state interest. There can be no question that the state has a vital interest in assuring that its judges are free from direct political pressure; that they can render decisions independent of political ramifications; and that they can discharge their duties free from the pressure, sometimes subtle and sometimes otherwise, that can be applied by political groups.

In this type of situation, however, as the interference with First Amendment rights becomes more severe, the statutory means employed by the state must fit more closely the desired end. It must be the least restrictive alternative. *See Morial v. Judiciary Commission of State of Louisiana*, 565 F.2d 295 at 300 and discussion at note 5 (5th Cir. 1977). The Fifth Circuit has also stated that although control of the election process is a valid concern of the state, if the state seeks to control it by a law that is "unduly restrictive" then the law "may so impinge upon freedom of association as to run afoul of the First and Fourteenth Amendments." (citation omitted). *Riddell v. National Democratic Party*, 508 F.2d 770, 777 (5th Cir. 1975). When a law does run afoul of the First Amendment in a significant or substantial manner, then courts are obligated to invoke strict constitutional scrutiny. *Id.* at 776. Under such a test, the state is then required to show a compelling interest, to be achieved by statutory means that are "closely drawn to avoid unnecessary abridgement." *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 98 S.Ct. 1407, 1421, 55 L.Ed.2d 707 (1978).

Florida Statute § 105.09 most assuredly aids the state in maintaining the non-partisan qualities of its elections. It does promote a compelling state interest.

However, its ends do not fit tightly enough with its means. It is not "closely drawn", *Bellotti, supra*, nor is it the "least intrusive means of achieving its objective." *Elrod v. Burns*, 427 U.S. 347, 363–364, 96 S.Ct. 2673, 2684–2685 (1976).

In this case, the statute operates against private citizens who wish to express their political preferences. This is not a case involving the possible conflicts of politically active government employees, or a judge who seeks another elected office. *U. S. Civil Service Commission v. National Association of Letter Carriers*, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973); *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *Morial v. Judiciary Commission of State of Louisiana*, 565 F.2d 295 (5th Cir. 1977). There are certainly less restrictive alternatives available to the state; in fact, it appears that they already exist. The court feels that the state can permissibly achieve its goal of keeping judicial elections non-partisan by regulating the partisan activity of judges and judicial candidates. This appears to have been accomplished by *Fla. Stat.* § 105.071, see note 3, *supra*. Also the elections themselves are kept non-partisan by the operation of *Fla. Stat.* § 105.021 which specifically provides that judicial officers are to be elected on separate non-partisan ballots. With these two statutes, the state has succeeded in keeping the judicial candidates themselves and their election non-partisan. It cannot also control private citizens who wish to make their choices known. Having decided the likelihood of success on the basis of plaintiff's first two counts, the court will not at this time consider counts III and IV. If necessary, they may still be considered at the trial on the merits.

5. The court concludes that plaintiffs will suffer irreparably if enforcement of the statute is not enjoined. The elections are less than a month away, and plaintiffs are threatened with criminal prosecution. If they act, they face criminal sanctions from the state. If they wait, the elections will have come and gone.

6. There is no question that the injury to plaintiff, if the injunction is denied, will outweigh the injury to defendant if it is granted.

7. By promoting the exchange of political ideas, it appears that the public will be benefited by the preliminary injunction. This factor is troublesome because there is an obvious interest to both the public and the Legislature in having judicial candidates free of the appearance of impropriety. An appearance of partisanship will hardly foster public confidence in the courts. However, the court feels constrained under cases discussed in conclusion number 4, *supra*.

The strength of the first two factors compensates for the weakness in the fourth factor. *Knights of K.K.K. v. East Baton Rouge Parish School Board*, 578 F.2d 1122 (5th Cir. 1978) citing *Texas v. Seatrain Int'l S.A.*, 518 F.2d 175 (5th Cir. 1975) and *Siff v. State Democratic Executive Committee*, 500 F.2d 1307 (5th Cir. 1974).

Accordingly, it is

ORDERED AND ADJUDGED that plaintiffs' request for preliminary injunction is granted. The State Attorney for Dade County, Florida is hereby enjoined from prosecuting the Concerned Democrats of Florida or any of its members for any violations of *Fla. Stat.* § 105.09 pending the final determination of this case on the merits.