**In re GULF COAST ORTHOPEDIC CENTER, ALFRED O. BONATI, M.D., P.A., Debtor.**

**GULF COAST ORTHOPEDIC CENTER, ALFRED O. BONATI, M.D., P.A., Plaintiff,**

v.

**TIMES PUBLISHING COMPANY, d/b/a The St. Petersburg Times, Defendant.**

**Bankruptcy No. 96–14739–8P1. Adv. No. 96–1212.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Feb. 3, 1997.

Charles M. Tatelbaum, Clearwater, FL, for Plaintiff.

Cynthia L. Hain, St. Petersburg, FL, for Defendant.

### ORDER ON AMENDED MOTION TO DISMISS

ALEXANDER L. PASKAY, Chief Judge.

This is a Chapter 11 case, and the matter under consideration is an Amended Motion to Dismiss filed by the St. Petersburg Times, the Defendant in the above adversary proceeding (Defendant). The Complaint filed by Gulf Coast Orthopedic Center, Alfred O. Bonati, M.D., P.A., (Debtor) sets forth one claim which is based on the allegation that the Defendant violated the protection granted to the Debtor by the automatic stay, specifically § 362(a)(1) (sic) of the Bankruptcy Code. However, it is evident from the Complaint that the facts alleged are based on § 362(a)(6). Based on the alleged ongoing violations, the Debtor seeks a mandatory injunction prohibiting the Defendant from continuing the conduct described in the Complaint.

The Defendant's Amended Motion to Dismiss primarily relies on the proposition, supported by authorities, that to grant the relief sought by the Debtor would be a violation of the First Amendment guarantee under the United States Constitution because any governmental intrusion into the functions of the editors of a newspaper is inconsistent with the First Amendment's guarantee of free press. The Defendant does not challenge the legal insufficiency of the Complaint but contends that based on the First Amendment argument, this Debtor is not capable of framing a Complaint which would not run afoul of the prohibition of the First Amendment and, therefore, the Defendant's Amended Motion should be granted and the Complaint dismissed with prejudice.

Before considering the Defendant's argument based on the First Amendment one should consider, initially, the legal sufficiency of a pleading to state a claim upon which relief can be granted. In order to put this issue in proper focus, a brief recap of the factual allegations are as follows.

The Debtor in its Complaint in paragraph 5 alleges: (i) that the Defendant newspaper is without competition in the Pinellas and Pasco Counties of Florida and has a virtual monopoly on the daily print advertisement; (ii) that the Defendant refused to accept advertisement to be placed by the Debtor because the Debtor is involved in a Chapter 11 case; (iii) that the individual principal of the Debtor, Dr. Bonati, is indebted pre-petition to the Defendant; (iv) that the Debtor has an outstanding judgment against it for its alleged violation of the RICO statute; and (v) that the Debtor has a jury verdict against it based on fraud.

The Debtor further alleges in paragraph 7 of its Complaint, that it commenced an action based on defamation against the Defendant in the Circuit Court for Pasco County, which action is still pending. In Paragraph 8, the Debtor contends that the refusal by the Defendant to accept advertisement from the Debtor constitutes an act to collect a debt against the Debtor that was or could have been commenced before the commencement of the Chapter 11 case, thus, in direct violation of 11 U.S.C. § 362(a)(1) (sic). In Paragraph 9, the Debtor alleges that the action of the Defendant in denying the Debtor's right in placing an advertisement in the newspaper published by the Defendant is "tortious in nature" and is an attempt to permit the Defendant to use its superior position in the market place to force the Debtor out of business, thus, the Debtor will no longer be able to maintain its meritorious litigation against the Defendant.

Based on the foregoing factual allegations, it is the position of the Debtor that, as the result of the conduct of the Defendant, it has suffered and will suffer severe, immediate and irreparable injury, therefore, it is entitled to a preliminary and permanent injunctive relief in the form of a mandatory injunction requiring the Defendant to permit the Debtor to place advertisement in the various editions of the St. Petersburg Times, so long as the Plaintiff pre-pays for the advertisement.

In considering a Motion to Dismiss, it is clear that in reviewing the sufficiency of the allegations, the court must accept the allegations of a complaint as true and must construe the facts as alleged in the light most favorable to the Plaintiff. *Hunnings v. Texaco, Inc.,* 29 F.3d 1480, 1484 (11th Cir.1994). As stated by the Supreme Court in the case of *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Supra,* at 45–46, 78 S.Ct. at 101–102. In light of the foregoing legal principles, it appears to be necessary to first consider whether or not the Debtor alleges sufficient facts to show that the Defendant, in fact, violated the automatic stay. And second, if it is answered in the affirmative, to consider whether based on those facts, the Debtor is entitled to the relief it seeks, in this instance, a mandatory injunction against the Defendant newspaper.

■ It is well recognized that automatic stay is one of the fundamental debtor protections provided by bankruptcy law. It was designed to give the debtor a breathing spell from his creditors and prevent a dismemberment of the debtor's estate. House of Representatives Report 595, 95th Cong., 1st Sess. 340–341 (1977) U.S.Code Cong. & Admin.News 1978, 5787. It is equally true however, that the protection granted by the automatic stay is clearly not without limitations. If the violation is alleged, the act complained of must be within the statutory language in order to withstand an attack on the sufficiency of the allegations.

■ Considering first the alleged violation of § 362(a)(1) of the Bankruptcy Code, the reliance on this Section is clearly misplaced. There are no facts, as noted earlier, that could sustain a violation under § 362(a)(1). Even a cursory reading of the allegations set forth in the Complaint, coupled with the language of the Statute relied on by the Debtor,

leaves no doubt that it would be totally unwarranted to extend the scope of the protection granted by § 362(a)(1) and construe the Defendant's conduct as being tantamount to "a commencing or continuation, or employment of any process judicial or adversary" against the Debtor.

█ Although not plead, counsel for the Debtor urged that the Defendant's conduct violated § 362(a)(3). Equally, this alternative theory cannot save the Complaint. This Subclause prohibits any act to obtain possession of property or exercise control over property of the estate. According to the Debtor, the conduct of the Defendant would be tantamount to a violation of § 362(a)(3) which in this instance, is a chose of action, i.e. the lawsuit filed by the Debtor against the Defendant. To accept the soundness of this argument and the conclusion which, according to the Debtor, could be drawn from this equation, requires one to jump through at least two hoops. First, that the "property of the estate" was capable of being possessed, and second, that the Defendant's conduct could be construed to be an act to exercise control over the "property of the estate." This Court is hard pressed to accept the soundness of this logic and is satisfied that research of counsel revealed no persuasive authority to support this proposition.

█ This leaves for consideration the legal sufficiency of the Complaint as it relates to the alleged violation of § 362(a)(6). In support of this proposition, the Debtor cites the case of *In re Sechuan City, Inc.*, 96 B.R. 37 (Bankr.E.D.Pa.1989). In *Sechuan City*, the landlord's manager and its principal posted various signs throughout the hotel lobby where the tenant restaurant was located. These signs stated that the tenant had filed bankruptcy and was not paying its bills. The landlord hotel also decided not to allow alcoholic drinks to be served in the tenant restaurant. The Debtor filed an adversary proceeding alleging a violation of the automatic stay and the district court held that the conduct of the landlord did in fact violate the automatic stay. The conduct of the landlord in *Sechuan City* was an affirmative act designed clearly to coerce the Debtor into paying his pre-petition debt to the landlord.

Unless this Court accepts the proposition that a refusal to accept an advertisement is the same as picketing, *Sechuan City* furnishes scant support for the theory advanced by the Debtor.

This Court is unwilling to accept the proposition that the refusal to accept the advertisement was an act to collect, assess, or recover a claim against the Debtor, which arose pre-petition. However, one cannot categorically reject this theory and conclude that the Debtor cannot possibly plead facts which might state a viable claim under § 362(a)(6). This being the case, it would be improper to dismiss this Complaint with prejudice based on the teachings of *Conley supra* and in particular, *In re Johannessen*, 76 F.3d 347 (11th Cir.1996). Thus, while the Debtor theoretically should be entitled to amend the Complaint and state a claim, this Court must consider whether or not the Debtor is entitled to the relief it seeks even if it is able to plead a viable claim under § 362(a)(6).

At this point it should be important to note that the precise relief sought by this Complaint is not an award of damages for violation of the automatic stay based on § 362(h) but rather, the Complaint seeks injunctive relief by way of a mandatory injunction ordering the Defendant to accept the advertisement submitted for publications by the Debtor. This, in turn, brings into play the major argument presented by the Defendant which stands for the proposition that under controlling case law a newspaper cannot be prohibited either to publish or not publish, and no one can interfere with the editorial decision-making process of a newspaper as it relates to its activities of publishing a newspaper.

The seminal case on this point, cited by the Defendant, is *Miami Herald Publishing Company v. Tornillo*, 418 U.S. 241, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974). In this case, the Supreme Court construed a Statute of Florida, often referred to as "the right to reply" as unconstitutional. The Statute in effect compelled publishers to publish the reasons for not publishing a rebuttal to a political attack on a candidate for office. The Supreme Court in invalidating the Statute held that the Statute granting a probable

antidote right to equal space to reply to criticism and attacks on the record, violated the First Amendment guarantee of free press.

In the case of *Bigelow v. Virginia,* 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975), a newspaper editor who published an advertisement of an organization located out of State which offered services related to obtaining legal abortions was convicted under the applicable Statute. The Supreme Court, in reversing, held that the Statute was unconstitutional and infringed on the editor's First Amendment right to free speech which was not lost merely because the publication was a commercial advertisement. In the case of *Gore Newspapers Company v. Shevin,* 397 F.Supp. 1253 (S.D.Fla. 1975), the Southern District of Florida held that a newspaper cannot be compelled to print advertisement and may decline all political advertisements for any reason however capricious. In the case of *Mississippi Gay Alliance v. Goudelock,* 536 F.2d 1073 (5th Cir.1976), the Court of Appeals held that the First Amendment prohibits judicial interference with an editor's decision not to accept political advertisement. In so holding, the court stated that the choice of material to go into a newspaper constitutes exercise of editorial control and judgment and governmental regulation of this crucial process cannot be exercised consistent with the First Amendment guarantees of free press, citing as authority *Miami Herald v. Tornillo, supra.*

In sum, it is apparent and this Court is satisfied that, while the Complaint might very well survive a Motion to Dismiss, it cannot stand because based on those allegations, the Debtor would not be entitled to any relief it seeks as a matter of law even if properly amended.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Defendant's Amended Motion to Dismiss be, and the same is hereby, granted and the Plaintiff's Complaint is dismissed with prejudice.